**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Summa Humma Enterprises, LLC,
d/b/a MB Tractor & Equipment</u>

    v.                                    Civil No. 12-cv-367-LM
                                       Opinion No. 2013 DNH 002
<u>Fisher Engineering</u>


**<u>O R D E R</u>**


In an action that has been removed from the New Hampshire
Superior Court, Summa Humma Enterprises, LLC ("MB Tractor"), a
dealer in various kinds of equipment, has sued snowplow
manufacturer Fisher Engineering ("Fisher") for ending the
business relationship under which MB Tractor purchased snowplows
and other equipment from Fisher for resale.  Specifically, MB
Tractor petitions for a declaratory judgment that reinstates the
agreement under which it purchased equipment from Fisher (Count
I), and it also asserts claims for damages under three New
Hampshire statutes (Counts II, III, and IV).  Before the court
is Fisher's motion to dismiss, based upon a forum-selection
clause in one of the two documents that memorialize its
agreement with MB Tractor.  MB Tractor objects.  For the reasons
that follow, Fisher's motion to dismiss is granted.

## The Legal Standard

In this circuit, "a motion to dismiss based on a forum selection clause [is treated] as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 387 & n.3 (1st Cir. 2001)). Accordingly, this court "must 'accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor.'" Rivera, 575 F.3d at 15 (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)). In addition, "[u]nder Rule 12(b)(6), the . . . court may properly consider . . . facts and documents that are part of or incorporated into the complaint." Rivera, 575 F.3d at 15 (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)).

## Background

For just under four years, MB Tractor purchased snowplows and other equipment from Fisher for resale. The business relationship between MB Tractor and Fisher was governed by two documents. The first, captioned "Purchase & Security Agreement for Snowplow Units, Accessories and Equipment," is referred to in this order as the "P&S Agreement." The second, captioned

"Fisher Engineering Terms of Sale," is referred to as the "Terms of Sale."  Because both documents were incorporated into MB Tractor's petition in the superior court, this court may properly consider them when ruling on Fisher's motion to dismiss.  See Rivera, 575 F.3d at 15.

The P&S Agreement includes the following relevant provisions:

1. **PURCHASE:**  The undersigned ("Buyer") desires to purchase, from time to time, products manufactured by Fisher Engineering ("Fisher") including snowplows and snowplow accessories, attachments, replacement parts, and such other products as may be desired by Buyer.

   Fisher shall sell the products to Buyer and Buyer shall purchase the products from Fisher in accordance with the terms and conditions set forth herein.  Unless otherwise expressly agreed in writing by Fisher, all purchases of products from Fisher by Buyer shall be according to the terms and provisions of this Agreement and Fisher's Distributor Sales Policy and Terms and Conditions (as may be in effect from time to time) (the "Business Terms and Conditions." . . . In the event of any inconsistency between the terms and conditions set forth in this Agreement and the Business Terms and Conditions, the provisions of this Agreement shall control.

. . . .

14. **GOVERNING LAW/FORUM:**  All of the aspects of this transaction shall be governed by the laws of the State of Maine.  This Agreement shall be considered to have been executed in the State of Maine.  Buyer consents to personal jurisdiction in the State of Maine, and voluntarily submits to the jurisdiction of the courts of Maine in any action or proceeding relating to or in connection with this Agreement.

15.  **ENTIRE AGREEMENT:**  This Agreement and the
Business Terms and Conditions set forth the terms
of the entire contract of sale and purchase of
the products described herein.

Notice of Removal, Ex. A (doc. no. 1-1), at 13, 17-18.

The Terms of Sale, in turn, include the following relevant

provisions:

3.  <u>Products</u>.

You may resell and distribute those Products
authorized by us from time to time, and we
reserve the right to discontinue, withdraw or
limit the sale of any and all Products, and to
change the design and specifications of the
products.

. . . .

6.  <u>Nonexclusivity</u>.

Although Fisher Engineering uses care in
selecting its authorized outlets, you agree that
your approval as an authorized outlet in no way
constitutes the grant of a franchise or other
exclusive or special right to purchase or sell
Fisher Engineering's Products.  There is no
franchise fee or other charge to you, other than
the costs of goods sold to you.  We reserve the
right to sell to others and to decline to sell to
you for any reason or no reason, in our sole
discretion, at any time.

. . . .

13.  <u>Miscellaneous</u>.

Unless you have executed a written agreement with
Fisher Engineering accepting terms and conditions
other than those set forth in these Terms and
Conditions of Sale, in which case such agreement
shall supersede these Terms and Conditions of
Sale, these Terms and Conditions of Sale

> constitute the entire agreement between you and
> Fisher Engineering with respect to the subject
> matter hereof, superseding all prior written and
> oral agreements, understandings and undertakings.
> . . .   You hereby irrevocably consent and submit
> to the exclusive jurisdiction of the state and
> federal courts located in the State of Maine for
> the resolution of any dispute concerning any
> Products or these Terms and Conditions of Sale.
> Nothing herein shall be deemed to create a
> relationship other than at will which may be
> terminated by us or you upon the giving of notice
> to the other.

Notice of Removal, Ex. A (doc. no. 1-1), at 21-23.

Neither the P&S Agreement nor the Terms of Sale bears a date, and the copy of the P&S Agreement attached to MB Tractor's petition is only partially executed.  Even so, there is no dispute over the authenticity of those two documents, and the parties appear to agree that both were in effect at all times relevant to this matter.

In the fall of 2011, MB Tractor began promoting and selling, in addition to Fisher products, a line of snowplows and snowplow equipment manufactured by BOSS, one of Fisher's competitors.  On May 10, 2012, Fisher notified MB Tractor, by letter, of its intention to terminate its relationship with MB Tractor, effective September 10, 2012.  "According to the letter, Fisher's primary reason for termination was its belief that MB Tractor was not fully committed to the promotion and sale of Fisher Products."  Notice of Removal, Ex. A, Super. Ct. Pet. (doc. no. 1-1), at 5.  "Fisher's termination letter also

cited MB Tractor's allegedly unfavorable approach to conducting business with Fisher as a reason for terminating the Agreement." Id. at 6.  This action followed.

In Count I, MB Tractor asserts that it "is entitled to a declaration pursuant to RSA 491:22 adjudicating and decreeing its rights under the [P&S] Agreement, and declaring that the [P&S] Agreement should be reinstated and enforceable between the parties."[1]  Notice of Removal, Ex. A, Super. Ct. Pet. (doc. no. 1-1), at 7.  MB Tractor also seeks relief for alleged violations of New Hampshire's: (1) Equipment Dealership Act, N.H. Rev. Stat. Ann. ("RSA") ch. 347-A (Count II); (2) Consumer Protection Act, RSA ch. 358-A (Count III); and (3) Antitrust Act, RSA 356:3 (Count IV).

## Discussion

Fisher moves to dismiss MB Tractor's claims, arguing that MB Tractor is contractually obligated to litigate them in Maine. Fisher relies on the next to last sentence in section 13 of the Terms of Sale, which it characterizes as a mandatory forum-selection clause that: (1) is controlling; (2) embraces the

---

[1] As an aside, it is unclear how, precisely, reinstatement of the P&S Agreement might benefit MB Tractor, as that agreement does not appear to obligate Fisher to sell any particular amount of equipment to MB Tractor, and also provides that no contract for sale exists until Fisher accepts a purchase order from MB Tractor.  See Notice of Removal, Ex. A (doc. no. 1-1), at 14. But, for reasons that will become apparent below, that is an issue for resolution in another forum.

6

claims that MB Tractor asserts in this case; and (3) is enforceable against MB Tractor.  MB Tractor contends that: (1) the controlling forum-selection clause is the permissive one in section 14 of the P&S Agreement; (2) even if the forum-selection clause in section 13 of the Terms of Sale is controlling as a general matter, it is not applicable to the claims in this case; and (3) even if the section 13 forum-selection clause controls and applies to the claims in this case, public policy disfavors its enforcement.  The court considers each of MB Tractor's arguments in turn.

To decide the questions before it, the court will necessarily need to construe the P&S Agreement and the Terms of Sale.  "Contract interpretation, when based on contractual language without resort to extrinsic evidence, is a 'question of law.'"  C.A. Acquisition Newco, LLC v. DHL Express (USA), Inc., 696 F.3d 109, 112 (1st Cir. 2012) (quoting OfficeMax, Inc. v. Levesque, 658 F.3d 94, 97 (1st Cir. 2011)).  Moreover, as per section 14 of the P&S Agreement, the court turns to Maine law, whenever necessary, to identify legal principles to guide its interpretation of the two documents before it.  That said, "[b]ecause Maine law is coextensive with federal common law concerning the interpretation of forum selection clauses, the Court may [also] apply federal common law to interpret the forum selection clause in this case."  BlueTarp Fin., Inc. v. Matrix

Constr. Co., 845 F. Supp. 2d 342, 347 (D. Me. 2012) (footnote
omitted) (citing Fairchild Semiconductor Corp. v. Third
Dimension (3D) Semiconductor, Inc., 589 F. Supp. 2d 84, 89 & nn.
35, 36 (D. Me. 2008); Huhtamaki Co. Mfg. v. CKF, Inc., 648 F.
Supp. 2d 167, 180 (D. Me. 2009); GENUJO LOK Beteiligungs GmbH v.
Zorn, 943 A.2d 573, 580 (Me. 2008)).

### 1. The Controlling Forum-Selection Clause(s)

Fisher argues that MB Tractor is obligated to bring the
claims it asserts in this action in a state or federal court in
Maine, because that is the forum MB Tractor agreed to in section
13 of the Terms of Sale.  MB Tractor disagrees, contending that
the terms stated in section 14 of the P&S Agreement control the
conflicting terms in section 13 of the Terms of Sale, which
means that the permissive forum-selection clause in the P&S
Agreement trumps the mandatory forum-selection clause in the
Terms of Sale, thus allowing it to bring suit against Fisher in
New Hampshire.  MB Tractor is mistaken.

As a preliminary matter, the court notes that MB Tractor
does not challenge Fisher's construction of the forum-selection
clause in the Terms of Sale as mandatory, and the court agrees
with Fisher on that point.  In contrast with "[p]ermissive forum
selection clauses, often described as 'consent to jurisdiction'
clauses . . . mandatory forum selection clauses contain clear

language indicating that jurisdiction and venue are appropriate exclusively in the designated forum.'" Rivera, 575 F.3d at 17 (quoting 14D Charles Alan Wright et al., Federal Practice and Procedure § 3803.1 (3d ed. 1998)).  Here, in the Terms of Sale, MB Tractor did not just consent to the jurisdiction of the federal and state courts of Maine, it "irrevocably consent[ed] and submit[ed] to the exclusive jurisdiction of the state and federal courts located in the State of Maine."  Notice of Removal, Ex. A (doc. no. 1-1), at 23 (emphasis added).  That is a mandatory forum-selection clause.  For its part, Fisher does not argue that the forum-selection clause in the P&S Agreement is anything other than permissive.

Thus, the question that remains concerns the relationship between section 14 of the P&S Agreement and section 13 of the Terms of Sale.  In addressing that issue, the court bears in mind MB Tractor's sound observation that the P&S Agreement and the Terms of Sale "must be construed together in such a way that their terms are, to the extent possible, harmonized."  Pl.'s Mem. of Law (doc. no. 12-1), at 6 (citing Kandlis v. Huotari, 678 A.2d 41, 43 (Me. 1996); Rosenthal v. Means, 388 A.2d 113, 115 (Me. 1978); Canadian Nat'l Ry. Co. v. Montreal, Me., & Atl. Ry., Inc., 786 F. Supp. 2d 398, 415 (D. Me. 2011)).

In MB Tractor's view, the permissive forum-selection clause in the P&S Agreement conflicts with, and therefore displaces,

the mandatory form-selection clause in the Terms of Sale.
Fisher, on the other hand, characterizes the two clauses as
complimentary rather than contradictory, which would allow the
court to enforce the forum-selection clause in the Terms of Sale
without violating the term in the P&S Agreement requiring that
document to control when one of its terms conflicts with a term
in the Terms of Sale.  Fisher has the better argument.

    If the P&S Agreement contained a mandatory forum-selection
clause requiring MB Tractor to litigate against Fisher in one
state, and the Terms of Sale contained a mandatory forum-
selection clause requiring MB Tractor to litigate against Fisher
in a different state, then there would be an inconsistency
between the two documents.  In such a situation, the terms of
the P&S Agreement would prevail, and Fisher would be obligated
to defend against MB Tractor's claims in the state specified by
the P&S Agreement.  Or, if the P&S Agreement affirmatively
granted MB Tractor the right to bring claims against Fisher in
New Hampshire, that term would conflict with the mandatory
forum-selection clause in the Terms of Sale and render it
ineffective.  But neither of those scenarios reflects the
circumstances of this case.

    Here, the P&S Agreement and the Terms of Sale may be
construed together and harmonized in a way that avoids rendering
any provision in either document meaningless.  See Canadian

National, 786 F. Supp. 2d at 415 (citing Crowe v. Bolduc, 334
F.3d 124, 135 (1st Cir. 2003) for the proposition that "[a]n
interpretation that would render any particular provision in [a]
contract meaningless should be avoided").  To be sure, all agree
that the clause in the P&S Agreement is permissive while the
clause in the Terms of Sale is mandatory.  But, there is nothing
about MB Tractor's submitting to the exclusive jurisdiction of
the state and federal courts of Maine, as it does in the Terms
of Sale, that is inconsistent with its consenting to personal
jurisdiction in the courts of Maine, as it does in the P&S
Agreement.  To borrow a concept from criminal law, the latter is
included within the former.  Or, looking at things in a
different way, requiring MB Tractor to honor the agreement it
made in section 13 of the Terms of Sale, i.e., requiring it to
sue Fisher in the courts of Maine, would not require it to give
up any right it was granted by section 14 of the P&S Agreement.
In short, there is no inconsistency between the two forum-
selection clauses.

      Because the two forum-selection clauses are not in
conflict, the provision establishing that the P&S Agreement
controls the Terms of Sale does not come into play.
Accordingly, there is nothing in the P&S Agreement to preclude
the court from enforcing the forum-selection clause in the Terms
of Sale.  That clause requires MB Tractor to bring certain

claims against Fisher in state or federal courts located in
Maine.

### 2. Applicability to the Claims in This Case

MB Tractor next argues that even if it is subject to the
mandatory forum-selection clause in the Terms of Sale, the
claims it asserts in this case fall beyond the reach of that
clause.  According to MB Tractor, while section 13 of the Terms
of Sale requires litigation in Maine of "any dispute concerning
any Products or these Terms and Conditions of Sale," Notice of
Removal, Ex. A (doc. no. 1-1), at 23, its claims against Fisher
do not concern either Fisher's products or the terms and
conditions under which Fisher sold those products.  Again, MB
Tractor is mistaken.

The linchpin of MB Tractor's argument on this point is its
characterization of the P&S Agreement as a "distributorship
agreement" governing the general relationship between the
parties and its characterization of the Terms of Sale as
covering a mere subset of that relationship.  That position is
somewhat difficult to square with MB Tractor's well-supported
legal argument that the two documents "are, in the eyes of the
law, one contract or instrument."  Kandlis, 678 A.2d at 43.  The
language of the two documents also cuts against MB Tractor's
position.

12

The agreement MB Tractor calls a distributorship agreement is titled "Purchase & Security Agreement," not "Distributorship Agreement."  In the agreement's first line of text, in a section titled "Purchase," MB Tractor is denominated as "Buyer," not "Distributor."  In that same sentence, MB Tractor is described as "desir[ing] to purchase, from time to time, products manufactured by Fisher Engineering."  Notice of Removal, Ex. A (doc. no. 1-1), at 13.  It is not described as desiring to have any relationship with Fisher other than as a buyer of Fisher's products.  In addition, section 1 of the P&S Agreement twice describes that agreement as setting forth terms and conditions for Fisher's sale of equipment to MB Tractor, see id. at 13, and section 15 describes the P&S Agreement as "set[ting] forth the terms of [a] contract of sale and purchase," id. at 18.  The limited nature of the relationship between MB Tractor and Fisher is reinforced by the Terms of Sale, in which MB Tractor agreed that it was not being granted "a franchise or other exclusive or special right to purchase or sell Fisher Engineering's Products."  Id. at 22.

Beyond that, the principal undertakings described in the P&S Agreement are Fisher's promise to sell its products to MB Tractor, and MB Tractor's promise to buy them.  All the other rights and obligations stated in the P&S Agreement are in support of the parties' promises to buy and sell Fisher's

13

equipment.  In arguing that the P&S Agreement pertains to some

broader relationship between itself and Fisher, MB Tractor notes

> its promise to, among other things, keep any inventory
> allocated to it by Fisher in good condition and free
> from competing creditor claims, . . . not allow Fisher
> products to become a fixture or accession to other
> goods and . . . not permit those products to be used
> in violation of any applicable law, regulation or
> policy of insurance.

Pl.'s Mem. of Law (doc. no. 12-1), at 7 (citation and internal

quotation marks omitted).  Fisher did not, however, agree to

"allocate" inventory to MB Tractor; it agreed to sell its

products to MB Tractor.  And, the undertakings described above

are described in the P&S Agreement as "Buyer's Covenants" under

the broader heading "Security Agreement."  In the first of the

four paragraphs that constitute the security agreement, MB

Tractor, as "Buyer," granted

> Fisher a security interest in all of the products
> purchased by Buyer from Fisher, together with all
> accessories, attachments and replacement parts now and
> hereafter affixed thereto and all substitutions,
> replacements and proceeds thereof (collectively,
> "Inventory") to secure buyer's payment of the price of
> the Inventory, and all charges related thereto (the
> "Obligations").

Notice of Removal, Ex. A (doc. no. 1-1), at 14.  By their very

terms, those obligations are related to MB Tractor's role as a

buyer.

Based upon the foregoing, the court concludes that rather

than entering into a distributorship agreement and a separate

agreement of more limited scope, MB Tractor and Fisher formed a single agreement for MB Tractor to purchase snowplows and snowplow accessories from Fisher, subject to the terms and conditions stated in the P&S Agreement and the Terms of Sale. In reaching that conclusion, the court notes that the strongest language supporting MB Tractor's claim to a business relationship with Fisher beyond that of a mere buyer appears in the Terms of Sale rather than the P&S Agreement.  But, while section 6 of the Terms of sale refers to MB Tractor as "an authorized outlet," Notice of Removal, Ex. A (doc. no. 1-1), at 22, that section also expressly disclaims "the grant of a franchise or other exclusive or special right to purchase or sell Fisher Engineering's Products," id.  Because the P&S Agreement and the Terms of Sale form a single integrated agreement governing the terms and conditions under which Fisher agreed to sell its products to MB Tractor, but nothing more, the language in section 13 of the Terms of Sale that mandates litigation in Maine of disputes "concerning . . . these Terms and Conditions of Sale," id. at 23, necessarily encompasses disputes concerning the P&S Agreement.  Thus, the next step in the analysis is to determine which of MB Tractor's claims, if any, are disputes "concerning" the P&S Agreement.  The analysis that follows rests on the premise that "it is the language of

the forum selection clause itself that determines which claims
fall within its scope."  Rivera, 575 F.3d at 19.

### a. Declaratory Judgment

In Count I, MB Tractor asks the court to "adjudicate[e]
. . . its rights under the [P&S] Agreement" and to declare "that
[the P&S] Agreement should be reinstated and enforceable between
the parties."  Notice of Removal, Ex. A (doc. no. 1-1), at 7.
Given that the P&S Agreement does nothing more than establish
terms and conditions under which MB Tractor purchased equipment
from Fisher, Fisher argues, quite reasonably, that MB Tractor's
request for an adjudication of its rights under the P&S
Agreement raises a dispute concerning the terms and conditions
under which MB Tractor agreed to purchase Fisher equipment.  In
its memorandum of law, MB Tractor retrenches a bit:

> In Count I, MB Tractor is seeking reinstatement of the
> Distributorship Agreement.  MB Tractor is not
> enforcing any specific provision of the
> Distributorship Agreement or Term Sheet through this
> claim, however, nor is it seeking an adjudication of
> its rights under either agreement.  Instead, MB
> Tractor is asserting that by virtue of Fisher's
> violation of three New Hampshire statutes, the
> distributorship relationship should be reinstated.

Mem. of Law (doc. no. 12-1), at 14 (emphasis added).

If, indeed, MB Tractor is asking the court to declare its
rights under the P&S Agreement, it is difficult to see how its
dispute with Fisher does not concern the terms and conditions
under which Fisher agreed to sell its products to MB Tractor,

given that the P&S Agreement is a component of a single
agreement covering that exact subject matter.  Thus, as it is
stated in the complaint, which is what the court must consider
when deciding a motion to dismiss, see Rivera, 575 F.3d at 15,
Count I falls within the scope of the forum-selection clause in
the Terms of Sale and must be litigated in Maine.  For that
reason, unless the court declines to enforce that clause, Count
I is subject to dismissal.  If, on the other hand, Count I
merely identifies a remedy but does not assert any cause of
action apart from those asserted in Counts II, III, and IV, then
Count I rises or falls in concert with Counts II, III, and IV.

### b. Violation of RSA chapter 347-A

In Count II, MB Tractor asserts that "Fisher's purported
termination of the Agreement in May 2012 violates RSA 347-A:2
because it terminated the Agreement without cause."  Notice of
Removal, Ex. A (doc. no. 1-1), at 8.  Fisher argues that Count
II must be adjudicated in Maine because MB Tractor's claim
concerns the terms and conditions under which it agreed to sell
its products to MB Tractor.  MB Tractor disagrees, arguing that
its "claim under the New Hampshire Equipment Dealers Act relates
to Fisher's unlawful termination of the supplier-dealer
relationship, not the products themselves or the terms and
conditions of the sale of these products."  Pl.'s Mem. of Law
(doc. no. 12-1), at 14.

17

In section 13 of the Terms of sale, MB Tractor agreed to the exclusive jurisdiction of the state and federal court in Maine to resolve "any dispute concerning" the terms and conditions of its purchase of products from Fisher.  Those terms and conditions are expressed by the Terms of Sale and the P&S Agreement.  Because those documents do nothing more than express the terms and conditions under which MB Tractor purchased equipment from Fisher, for the reasons explained above, MB Tractor's acceptance of the terms stated in section 13 of the Terms of Sale also constituted an agreement to the exclusive jurisdiction of the state and federal courts in Maine to resolve "any dispute concerning" the P&S Agreement.  MB Tractor offers no convincing argument that a dispute over Fisher's termination of the P&S Agreement is not a dispute concerning the P&S Agreement.

A recent order from the District of Maine offers useful guidance as to the breadth of the term "concerning," which is the key term in the forum-selection clause in the Terms of Sale:

> In Huffington [v. T.C. Grp., LLC], the First Circuit was careful to distinguish among types of forum selection clauses.  [637 F.3d 18, 23 (1st Cir. 2011).]  The Huffington Court points out that contracts with forum selection clauses with "embracing language" — like "with respect to," "with reference to," "relating to," "in connection with," and "associated with" — "have usually been construed broadly."  Id. at 22–23. . . .  By contrast, forum selection clauses with language like "to enforce" or "to construe" intend a "narrower focus."  Id. at 23.

Geneva Wood Fuels, LLC v. Earth Care Prods., Inc., No. 1:12-cv-00191-JAW, 2012 WL 6059205, at *5 (D. Me. Dec. 6, 2012).  The forum-selection clause at issue here uses "embracing language" of the sort that is to be construed broadly.[2]

If the forum-selection clause in the Terms of Sale had used language requiring MB Tractor to litigate in Maine only if it sought to enforce its rights under the P&S Agreement or to challenge Fisher's performance of its obligations under the P&S Agreement, then MB Tractor's argument might have merit.  But, by its express terms, the forum-selection clause covers "any" dispute "concerning" the terms and conditions of Fisher's sales

---

[2] For that reason, much of the analysis in Section III B of MB Tractor's memorandum of law is beside the point.  Most of the cases MB Tractor cites in that section involve forum-selection clauses that use the more restrictive "arising under" language.  See Huffington, 637 F.3d at 22 (describing "arising out of" as narrow in scope as compared with "with respect to," "with reference to," "relating to," "in connection with," and "associated with").  And, those cases address a question not present in this case, i.e., whether some non-contract claim is sufficiently related to a contract claim to fall within the scope of a forum-selection clause dictating the forum in which claims arising under the contract must be litigated.  See, e.g., Lambert v. Kysar, 983 F.2d 1110, 1112, 1121-22 (1st Cir. 1993) (holding, in case where forum-selection clause established exclusive venue for actions brought to enforce contractual terms and conditions, "that contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties").  In short, MB Tractor does not address the question before the court in this case, which is whether the claims stated in Counts II, III, and IV involve disputes concerning the terms and conditions under which MB Tractor purchased equipment from Fisher.

to MB Tractor.  That language is broad enough to cover MB
Tractor's claim in Count II that Fisher improperly terminated a
contract in which the parties agreed to those terms and
conditions.  Accordingly, the claim stated in Count II falls
within the scope of the forum-selection clause in section 13 of
the Terms of Sale and must be adjudicated in Maine.  That claim
is, therefore, subject to dismissal unless the court declines to
enforce the forum-selection clause.

### c. Counts III and IV

In Count III, MB Tractor asserts that Fisher violated the
New Hampshire Consumer Protection Act by terminating the P&S
Agreement, and in Count IV, it asserts that Fisher's termination
of that agreement violated the New Hampshire Antitrust Act.
Fisher argues that both claims must be adjudicated in Maine
because each concerns the agreement with MB Tractor that
established the terms and conditions under which it sold
equipment to MB Tractor.  For the same reasons that apply to
Count II, Fisher is correct.  Thus, as with the claim stated in
Count II, the claims stated in Counts III and IV are subject to
dismissal unless the court declines to enforce the forum-
selection clause.

3. Enforceability

All four claims that MB Tractor asserts against Fisher fall within the scope of the forum-selection clause in the Terms of Sale, which requires those claims be adjudicated in Maine. Thus, they are subject to dismissal, see Rivera, 575 F.3d at 15, so long as the forum-selection clause is enforceable against MB Tractor.  MB Tractor argues that "the forum selection clause [in the Terms of Sale] is unenforceable because it contravenes the strong public policy encompassed in the New Hampshire Equipment Dealer statute."  Pl.'s Mem. of Law (doc. no. 12-1), at 20.  In other words, MB Tractor argues that the forum-selection clause is unenforceable only as to the claim it asserts in Count II. In the absence of an unenforceability argument as to Counts I, III, and IV, the claims stated in those counts are dismissed. In response to MB Tractor's argument that the forum-selection clause is unenforceable as to Count II, Fisher disagrees.

On one point, however, the parties do agree; the issue of the enforceability of the forum-selection clause is governed by the law of Maine, which follows the federal common law.  The court concurs.  See Fairchild, 589 F. Supp. 2d at 89 ("The First Circuit routinely enforces forum selection clauses.  The Maine Law Court also recognizes and enforces them.") (footnotes omitted).  Under the federal common-law standard for evaluating the enforceability of forum-selection clauses, "[i]t is well-

settled that contractual forum selection clauses are prima facie
valid." BlueTarp, 845 F. Supp. 2d at 347 (footnote omitted)
(citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10
(1972)). As the court of appeals for this circuit has recently
explained:

> Under Bremen, "the forum clause should control
> absent a strong showing that it should be set aside,"
> 407 U.S. at 15, and the party resisting enforcement
> bears the "heavy burden" of demonstrating why the
> clause should not be enforced, id. at 17. The Supreme
> Court has listed four grounds for finding a forum
> selection clause unenforceable:
>
>> (1) the clause was the product of "fraud or
>> overreaching," id. at 15;
>>
>> (2) "enforcement would be unreasonable and
>> unjust," id.;
>>
>> (3) proceedings "in the contractual forum will be
>> so gravely difficult and inconvenient that [the
>> party challenging the clause] will for all
>> practical purposes be deprived of his day in
>> court," id. at 18; or
>>
>> (4) "enforcement would contravene a strong public
>> policy of the forum in which suit is brought,
>> whether declared by statute or by judicial
>> decision," id. at 15.
>
> See also Mitsubishi Motors Corp. v. Soler Chrysler-
> Plymouth, Inc., 473 U.S. 614, 632-33 (1985) (discussing
> Bremen's factors).

Huffington, 637 F.3d at 23-24 (parallel citations omitted).

In reliance upon the fourth ground identified in Bremen, MB
Tractor argues that enforcement of the forum-selection clause in
the Terms of Sale would contravene the strong public policy of

New Hampshire, as expressed in the Equipment Dealership Act ("EDA"). So, to be clear, MB Tractor applies <u>one</u> of the four <u>Bremen</u> factors to <u>one</u> of its four claims against Fisher. In support of its unenforceability argument, MB Tractor points out: (1) a provision in the EDA specifying that "[t]he place of any arbitration [called for in a dealership agreement] shall be in the city or county in which the dealer maintains the dealer's principal place of business in this state," RSA 347-A:9; and (2) several decisions in which courts outside New Hampshire have identified statutes purportedly similar to the EDA as expressions of public policies disfavoring forum-selection clauses that require out-of-state litigation. Neither of MB Tractor's arguments is persuasive.

Turning to MB Tractor's first argument, RSA 347-A:9 unquestionably expresses a strong public policy in favor of having arbitration proceedings involving equipment dealers and suppliers take place in the city or county in which the dealer is located. But, neither RSA 347-A:9, nor any other section of the EDA says anything about the proper venue for litigation between dealers and suppliers. Even accepting MB Tractor's proposition that public policy can be expressed by something less than an express statutory prohibition of the enforcement of forum-selection clauses, the fact that the EDA specifies where arbitration must take place but imposes no such requirement on

23

litigation tends to suggest that the public policy of New
Hampshire does not favor the venue requirement MB Tractor
posits.

That suggestion is strengthened by the fact that the Motor
Vehicle Dealership Act ("MDVA"), RSA ch. 357-C, which was
enacted more than a decade before the EDA, includes a pair of
provisions that bar New Hampshire courts from enforcing forum-
selection clauses that would prevent them from entertaining
actions brought under that act.  See Fog Motorsports # 3, Inc.
v. Arctic Cat Sales, Inc., 159 N.H. 266, 268-69 (2009)
(construing RSA 357-C:2 and RSA 357-C:6, III).  In other words,
when the legislature enacted the EDA, the MVDA provided a
detailed model for how to express a public policy against forum-
selection clauses that would require actions under a New
Hampshire statute to be litigated outside this state.  Moreover,
as MB Tractor itself points out in its citation to the
legislative history of the EDA, the legislature was well aware
of the MVDA when it enacted the EDA, which gives a strong
indication that the omission of an anti-forum-selection
provision in the EDA was a conscious choice by the legislature.
Thus, the legislative history of the EDA cuts against MB
Tractor's public-policy argument rather than supporting it.

The court's conclusion that the legislature consciously
chose not to include an anti-forum-selection provision in the

EDA is further reinforced by the fact that before the legislature enacted either the EDA or the MVDA, it had adopted the Uniform Model Choice of Forum Act, RSA ch. 508-A.  That act provides that, as a general matter, New Hampshire courts are to honor forum-selection clauses directing litigation to out-of-state fora.  See RSA 508-A:3.  However, it also recognizes several exceptions, one of which is that a court should disregard a forum-selection clause when it "is required by statute to entertain the action."  RSA 508-A:3, I.  In other words, RSA 508-A:3, I, was a second statutory signpost showing the legislature that enacted the EDA how it could express a public policy disfavoring out-of-state litigation of statutory claims – a signpost the legislature did not follow.  Like the inclusion of an anti-forum-selection provision in the MDVA but not the EDA, the legislature's presumed knowledge of 508-A:3, I, when it enacted the EDA is evidence that the legislature did not consider out-of-state litigation of EDA claims to contravene public policy.

The court is also unpersuaded by MB Tractor's reliance on out-of-state judicial opinions.  To begin, the key issue here is the public policy of New Hampshire, not public policy in some abstract, theoretical, or global sense, which means that what judges have said about the public policies of Wisconsin, New Jersey, and Missouri is tangential, at best.  There are also

more specific problems with MB Tractor's reliance on cases from those states.

MB first relies on several cases from federal district courts in Wisconsin that have concluded that Wisconsin's Fair Dealership Law expresses a strong public policy disfavoring forum-selection clauses that direct litigation of disputes arising under that law to out-of-state fora.  See, e.g., Cutter v. Scott & Fetzer Co., 510 F. Supp. 905, 908 (E.D. Wis. 1981); Van's Supply & Equip., Inc. v. Echo, Inc., 711 F. Supp. 497, 503 (W.D. Wis. 1989).  But, as the opinion in Cutter makes clear, the Wisconsin Fair Dealership Law contains various provisions that are absent from New Hampshire's EDA, such as: (1) an express assumption that suppliers "have inherently 'superior economic power and bargaining power in the negotiation of dealerships,'" id. at 908 (quoting Wis. Stat. § 135.025(2)(b)); and (2) a directive that "[t]he Fair Dealership Law is to 'be liberally construed and applied to promote its underlying remedial purposes and policies,'" Cutter, 510 F. Supp. at 909 (quoting Wis. Stat. § 135.025(1)); see also Van's, 711 F. Supp. at 503 ("Wisconsin has a strong interest in enforcing the [Fair Dealership] Act and has provided that the remedial goals of the statute may not be circumvented by choice of law clauses."). Thus, Wisconsin's Fair Dealership Law is not sufficiently

similar to New Hampshire's EDA to make Cutter and its progeny reliable guides to the public policy of New Hampshire.

Moreover, Cutter was decided more than thirty years ago, at a time when forum-selection clauses were still gaining acceptance in American courts.  See Cutter, 510 F. Supp. at 907. The level of acceptance for contractual forum-selection clauses has increased significantly since Cutter was decided.  Today, under both Maine law and federal common law, "contractual forum selection clauses are prima facie valid."  BlueTarp, 845 F. Supp. 2d at 347.  Such a clause is typically enforced unless "the party resisting enforcement [carries] the 'heavy burden' of demonstrating why the clause should not be enforced." Huffington, 637 F.3d at 23.  In sum, there is nothing in the Wisconsin cases on which MB Tractor relies that persuades this court that the public policy of New Hampshire would disfavor enforcement of the forum-selection clause in section 13 of the Terms of Sale.

MB Tractor's reliance on a case involving New Jersey's Franchise Act, Kubis & Perszyk Associates, Inc. v. Sun Microsystems, Inc., 680 A.2d 618 (N.J. 1996), is similarly unavailing.  Like the statute at issue in the Wisconsin cases, but unlike New Hampshire's EDA, the New Jersey Franchise Act includes legislative declarations concerning the inequality in bargaining power that favors suppliers over dealers.  See id. at

27

622 (citing N.J. Stat. Ann. § 56:10-7.2).  In addition, the
Franchise Act includes a provision under which dealers are
entitled to early injunctive relief, see Kubis, 680 A.2d at 621-
22, the benefit of which would be lost to a dealer forced to
litigate a Franchise Act claim in a court outside of New Jersey,
see id. at 628.  The EDA includes no such provision.  Perhaps
most importantly, the decision in Kubis rested on the New Jersey
Supreme Court's holding that "forum-selection clauses in
contracts subject to the Franchise Act . . . are presumptively
invalid."  Id. at 626.  The New Hampshire Supreme Court has made
no such pronouncement concerning forum-selection clauses in
contracts subject to the EDA.  Like the Wisconsin cases, Kubis
is a poor guide to the public policy of New Hampshire.

Finally, the Missouri opinion on which MB Tractor relies,
High Life Sales Co. v. Brown-Forman Corp., 823 S.W.2d 493 (Mo.
1992), is even less helpful than the opinions from Wisconsin and
New Jersey.  For one thing, High Life did not even involve a
public-policy argument of the kind that MB Tractor makes in this
case.  Rather, in High Life, the Missouri Supreme Court adopted
a rule allowing the enforcement of forum-selection clauses
calling for out-of-state litigation "so long as doing so is
neither unfair nor unreasonable," id. at 497.  In holding that
enforcement of the forum-selection clause in that case would be
unreasonable, see id. at 500, the court pointed out that

important public policies guided the enactment of Missouri's liquor control statutes, see id. at 498, and concluded that the statute's "importance to the public policy of the state, evidenced in part by the fact that any effort to waive or modify its provisions is unenforceable, dictates that this Court should not abrogate the responsibility of interpreting this important statute to the Kentucky courts," id. at 499-500.  But, because the High Life opinion identifies no expression of public policy disfavoring out-of-state litigation of claims brought under the statute other than the court's own appraisal of the statute's importance, that opinion does nothing to support the proposition that the public policy of New Hampshire disfavors out-of-state litigation of claims brought to enforce the EDA.

To summarize, MB Tractor has made only a limited argument for the unenforceability of the forum-selection clause in section 13 of the Terms of Sale, and the court is not persuaded by it.  That provision is enforceable against MB Tractor, compels the litigation of Count II in Maine, and entitles Fisher to dismissal of the claim stated therein.

## Conclusion

For the reasons described above, Fisher's motion to dismiss, document no. 9, is granted, without prejudice to MB Tractor's bringing the claims asserted here in another forum, in

accordance with the forum-selection clause in the Terms of Sale.
Accordingly, the clerk of the court shall dismiss MB Tractor's
complaint and close this case.

     SO ORDERED.

                                  _____
                                  Landya McCafferty
                                  United States Magistrate Judge

January 3, 2013

cc:   David A. Anderson, Esq.
       Nicholas F. Casolaro, Esq.
       Scott H. Harris, Esq.
       Michele E. Kenney, Esq.